May it please the Court, Alisa Klein for the Federal Government. I know the Court has been generous with its time. I will try to be brief. After the Supreme Court ruled, the interim and recognizing the Court has a lot of discretion about how much guidance to give the District Court on remand, I will just touch on the claims that the plaintiffs in the conclusion of their Why would we, I mean what, give me the case you have, the best case for the proposition that we can and should do anything other than rule on the preliminary injunction which is the limited appeal we have. Yes, recognize the Court has discretion to do that limited vacater of the preliminary injunction and that the plaintiffs concede that that at a minimum should happen. I was just looking for some examples when the Supreme Court issued an interlocutory ruling as it did in this case, what happened in the Court of Appeals, and so a fairly recent example was a different pandemic control measure issued by the Governor of New York that limited occupancy at religious worship services and it, you know, made its way up to the Supreme Court kind of in similar fashion and the Supreme Court effectively issued a preliminary injunction and the Second Circuit then wrote a full opinion, even though the Governor by that point acknowledged that there should be a preliminary injunction, the Second Circuit wrote an opinion to give guidance to the District Court about the merits proceedings. Now, I mean, that's certainly one example. What about the Eighth Circuit's example where it's just short and sweet? Right, and again, we're not saying that was error. We're recognizing this Court has discretion about how to proceed and I'm just struggling with the word discretion because we have limited jurisdiction on a 1292A appeal, A1, and it's on the preliminary injunction. Now, I understand if we, if there was, let's say there had not been a Supreme Court ruling on this and we're having to talk about it, there can be situations where what we're writing on certainly provides some guidance, but here where I think it's pretty clear what we need to do on, at least to me, it's clear what we need to do on the preliminary injunction. I don't understand why we should give advisory opinions and while it's down there, folks, think about this and how about that and, you know, so on. I mean, we don't do that anyway, but here how can we do that and why would we do that? Again, I'm not here to push the Court to do it. We do not think it would be an advisory opinion. So just for example, focusing on the anti-commandeering challenge to the rule itself, holding aside survey agencies, you know, I recognize those are distinct. This, the plaintiffs did argue to the Supreme Court that the rule is coercive as applied to state-run hospitals and other state-run facilities because the consequence of not complying with the rule would be potentially loss of Medicare and Medicaid funding and we addressed that in the Supreme Court and we think the Supreme Court implicitly rejected it because it upheld the rule as a condition of federal funds and under settled Supreme Court precedent, if that type of condition applies even handedly to privately-run hospitals and state-run hospitals, then there is no commandeering claim. So this is, you know, this is actually the issue that is most significant and we think the District Court, even though it didn't rely on it in its preliminary injunction opinion, it addressed it in a way that was legal error. It said, I need to know how many hospitals, et cetera, are run by the state as opposed to by private entities. That's on page 30 of the preliminary injunction opinion and that's just legal error. Nothing turns on those numbers. The principle, and we know the Court from Brackeen is very familiar with these principles, is when a federal regulation applies in an even-handed way to facilities or entities that are operated privately and entities that are operated by a state or local government, it just doesn't implicate the anti-commandeering doctrine. So make sure I've addressed the concerns on that issue, which in some ways is the issue of most importance from our perspective to make sure there's no confusion back on remand about whether the rule itself is still in play. So if we simply wrote an opinion that said we hereby reverse the preliminary injunction and remand period, what would happen next in your view? Assuming that the court, the District Court does what it said it would do in its indicative ruling, it would allow a second or potentially third amended complaint because not all of the issues that the plaintiffs are raising before this Court were actually in that second amended complaint, and then presumably we'd move to dismiss. So that's why we're not here saying the Court must do anything. We're just, as a matter of judicial economy, and since the Court invited us here and gave us 30 minutes, we're just trying to make sure if the Court chooses to address issues, we just want to make sure we have explained as clearly as possible where things stand. Well, you're welcome to use your 30 minutes or not to use your 30 minutes as you deem appropriate. I will try not to belabor any points, but I do want to address any concerns that the Court might have. So that's, as I said, this is the issue that to us is most significant, and we do think it was before the Supreme Court. There we were defending the rule itself, and regardless of whether it was being applied to a privately run hospital or a state run hospital. And just while I'm on that subject, since I know Tennessee won't get to speak after my rebuttal, I just very briefly want to underscore the point that's in the footnote on page 8 of our reply brief, which is that Tennessee is here saying that some number, I think three or four, Tennessee run healthcare facilities are not in compliance with the rule and are therefore at risk of losing federal money. And we're not saying that's true. We're just saying even accepting that description, the exclusive venue is a district court in Tennessee, and that's by statute under the provisions that we cite in that footnote. Okay. Can you help us? You know, you did foreshadow that your merits argument, and it's the big one that you care about, what did the Supreme Court say, if anything, about the IFR? Being a valid exercise of Congress's spending powers? Well, we read the opinion, the entire opinion, and particularly on statutory authority, as rejecting the other side's argument that this was not a valid condition on federal Medicare and Medicaid money. I mean, that's our whole argument to the Supreme Court was, you know, this is not ordinary regulation. This is the secretary overseeing, you know, enormous amounts of federal funds that gets paid to hospitals, nursing homes. You said implicit earlier on. What particular provision, part of the opinion would you point us to that says, aha, they have already said this is not, this is a loser claim? Well, two points. They said, and I'm paraphrasing, we reject the remaining arguments in defense of the preliminary injunction. I may not have that exactly right, but they definitely said that. And if the court looks at pages 26 to 27 of the plaintiff's Supreme Court brief, that's where they make, among other constitutional arguments, the argument that this would be coercive to... Okay, so this, like, it's the cleanup housekeeping provision at the end. We reject the remaining and move on with... We think it's probably... There's no reasons. It's more than that, but yes. I mean, they explicitly rejected the remaining contentions in defense of the preliminary injunctions. Right, but this is not like, though, what you would have from a judgment from a district court where when they say, and all relief not denied, you know, all not given is denied, and we consider that important, and you can say that things were rejected implicitly. This is a preliminary matter, and there might be reasons why you might not be entitled to preliminary relief, but that you might ultimately succeed on the merits on things. You know, that's... So you can't say that there's no permanent claim on that point based upon we reject these arguments, can we? Well, the plaintiffs made the constitutional argument in two forms. One is just a straight-out constitutional claim, but one was constitutional avoidance, and I don't think... I mean, if the Supreme Court had perceived a constitutional problem, it would have had to explain and address it. Instead, it just upheld the rule as a valid exercise of the Secretary's statutory authority. So I recognize implicit. The court didn't say we reject their constitutional avoidance arguments, but it's necessarily true that they did, and they were prominently made, and there's no basis for saying the Supreme Court missed them. It's not like these were in a footnote. And you don't disagree that the guidance, that the district court should be able to consider the legal issue of the guidance and whether it expands the IFR? Okay, so I'll turn to the guidance and correct. We are not suggesting the guidance was before the Supreme Court. It wasn't even out at the time the Supreme Court ruled. And so again, we appreciate the court may want to say nothing on this, but in case the court is inclined to say something, we'll set out why we don't think there's anything for the district court to do. So guidance document number one, the January 2022 guidance, is the one that's titled Expectations for State Surveyors. And, you know, just to back up, so now we're talking about states in a different capacity. Under the federal statute, if a state wants to, it can enter into an agreement, just a contract, with the federal government, with CMS, and it says, you know, we will survey, inspect all sorts of facilities to see if they're complying with the conditions on federal funds. So, and they might be inspecting state-run facilities, they might be inspecting privately-run facilities, but this is just all by contract. The first guidance document, which set out expectations for state surveyors, we understand that the plaintiffs had concerns that this was imposing a mandate, a requirement that state survey agencies ensure that their own staff were vaccinated. And, as we said in our briefs, and I'm saying again to the court, as an officer of the court, there is no such legal requirement. CMS was setting out expectations. It did not mean to establish a legal requirement. State survey agencies are not among the facilities that are regulated by the IFR, by the Interim Court of Appeals. So there's a lot of difficulty for people who want to comply with what the government tells them to do, when the guidance gives you strong statements, and then you say, well, the guidance really doesn't require anybody to do anything. And we have these discussions over and over again, and this is somewhat problematic. I mean, I can think of, for example, Title IX has had a whole series of guidance, and then we say, oh, well, that's really just guidance, and it doesn't apply. But people change their whole, spend millions and millions of dollars at universities based upon this interim guidance, and then that interim guidance says something different, and they're pretty strongly worded, and then we find out, oh, well, they're not even binding anyway. You know, it's just a very difficult way to try to be in compliance with government regulation. I hear the court's concerns, and I'm in no way discounting them. I do want to underscore that this type of guidance, CMS routinely provides to state survey agencies with the same tagline that was on this guidance, which is, if you have questions, call us. There's a lot of informal back and forth, and, like, I realize, like, we could have better written the guidance back in January, but we are attempting to remove any doubt. We said it in district court. We said it in this court. There is... Have you changed the guidance to say, to make it, you know, it's changed, right? It's not been, you know, reissued. Why is it not being, once you realize there's a problem with it, that's causing confusion for people, and you're having to stand in court and say, no, we didn't really mean this, then why isn't it being, oh, we need to fix that language so we're not confusing people? I understand, Your Honor, and we will take this back to the client to make sure if there's any lingering confusion. We don't think, you know, we're inferring from the Missouri plaintiff's cert petition that at least those states have taken sufficient comfort, they're not challenging this guidance, but we can do better. I just want to make clear that it was not meant to be a legal requirement, and also, on its face, there's no enforcement mechanism. So, like, as in the Supreme Court's decision in the California versus Texas case involving the Affordable Care Act's individual mandate after the zeroing out... Like that. Right. And so, just, you know, on its face, there's no enforcement mechanism, so under the principles set out by the Supreme Court, there's not standing to... Tell us what you think we should do in this particular case in terms of the remand. If the court is inclined to address issues on this particular... No. What is your position? Well, we are asking the court to address the commandeering issue, because we, the commandeering of state-run facilities... The district court has never addressed that. The district court addressed it in a way that was incorrect. They addressed it by not addressing it, right? Well, its reasoning on page 30 of the preliminary injunction opinion was legally incorrect. It suggested that anything mattered about how many state-run hospitals or other facilities there are. Was that an issue presented to the Fifth Circuit initially? I don't recall. That went by fast. I know in the Supreme Court, where we had a little bit more time, we did emphasize that this condition applies even-handedly, regardless of whether the facility is privately run or state-run. Did you make the argument with respect to the under-commandeering statute that you're making to us? I mean, or did you ever suggest to the district court the error that they made in calculating the issue? If I heard correctly, in the Supreme Court, the word the plaintiffs used was it's coercive, but we believe they were using that as a synonym for commandeering, when what they were talking about were state-run hospitals, nursing homes, et cetera. We addressed it in those terms. I'm sorry. Your earlier discussion with Judge Elrod about the January 2022 guidance made me wonder. I don't think you answered my question. Can you give me a Fifth Circuit or—I didn't ask it this specifically—Fifth Circuit or Supreme Court case that would show that we should and can rule on that? You just keep saying it's discretionary. I'm a little bit of a jurisdiction on a limited appeal. So can you tell me what case would say it's okay for us to get into this conversation about the guidance, and if we didn't think anti-commandeering was brought up, but we could talk about it anyway, and we can just have a good time talking on and on? Please. So on the issue of commandeering of states, we think that was pled in the original complaint, and it was addressed by the district court. And the plaintiffs could have— So we could discuss that in reversing or affirming, although I don't think we're going to affirm, but— Yes. Obviously, we're assuming that the P.I. will be vacated, given that the plaintiffs conceded it should be vacated, so I haven't lingered. We could discuss it, you're saying, as part of our reasoning. Okay. But what about this January 2022 point? I don't have an example. And again, we recognize that the court may choose to say nothing about the January 2022 guidance and the February 2022 guidance. So we just want to make sure we're here clearly saying the January 2022 guidance does not impose a requirement that state survey— I heard what you said on that. Okay. But I'm still struggling with whether I should say something and can say something about it at this point. Understood. Yeah, understood. The February guidance, that's a little different because this was an issue that was called to the attention of the Supreme Court. That is about the states, what types of survey activities do they need to do? And what we were explaining because the plaintiffs were using the rhetoric of commandeering to refer to, you know, this is again, this is the states going out and inspecting and reporting back to CMS on whether various facilities within the state are in compliance with conditions of Medicare and Medicaid participation. And the point we made to the Supreme Court and that we're making here is that's just all governed by contract. That's not, we're not in the world of a commandeering claim. You could fight, you know, and maybe there'll be future hypothetical, you know, future disputes about the contract obligations and contract remedies. But all we're trying to explain, you know, for this court is that doesn't implicate the rule itself. This is the same point we made in the Supreme Court. Just briefly, but what is your response to our simply remanding and just saying to the district court, we remand the case in the light of the Supreme Court opinion for you to further consider? Again, I'm probably repeating myself. We recognize the court could do that. And that is what the Eighth Circuit did. Pardon? We recognize that the court could do that. I understand that. But what is your response to it? Is it your entire argument here that we should address these issues that have really not been addressed by the district court? On the question, the first issue that I addressed, whether the rule itself could be declared to be commandeering state-run hospitals and other facilities, we're asking the court to address that issue. We do think that is clearly properly before the court. It was addressed in the Supreme Court and going back to my implicitly, implicitly rejected by the Supreme Court. We fully appreciate that the guidance documents were not before the courts earlier. The district court indicated it was inclined to proceed on them. And if it does, of course, you know, move to dismiss or raise whatever arguments we have in district court. Thank you. Thank you. Save time for rebuttal. Good morning, Your Honors. May it please the court, I'm Liz Murrell, the Solicitor General for Louisiana, and I represent Louisiana and 11 other states who filed this action. I appreciate the opportunity to be here in person and talk to you about this extraordinary case. It's extraordinary for a lot of reasons. It's extraordinary because of the speed with which this litigation moved up to the United States Supreme Court. It's extraordinary because of what the government is asking you to do today. And it's extraordinary because we've been essentially stuck here for the last, since February, after we conceded that this preliminary injunction should be vacated, which is the only relief that was requested by the government in its appeal. In that time, we asked for the permission to amend our complaint and bring the January 25th claim and move forward with our commandeering claim, and we were denied the opportunity to do that by a motions panel ruling. Well, first by the district court judge who issued an indicative ruling, something we all learned a lot about, and then we brought it here, and we were denied by a motions panel, and it was referred to this panel to determine what to do about that ruling after we filed for rehearing en banc. Our suggestion, Judge Jolly, to your question about what this panel should do is that it should reverse the preliminary injunction, vacate it, remand it. This is exactly what the Eighth Circuit did. We've conceded that that is an appropriate action for this court, but we also would ask that you vacate the 12.1 ruling. That ruling was clearly erroneous on several points. It got a couple of things right, but it got a couple of things very, very wrong, and particularly the commandeering claim. We raised that claim. It is count five of our original complaint, of our first amended complaint, and we gave additional allegations related to the commandeering claims in our second amended supplemental complaint. Judge Haynes has asked a whole series of questions about, you know, a limited appeal and whether we have jurisdiction. Why would we have jurisdiction to opine on that? Because it was a motion that was brought before this court, and it was referred in the motion ruling to this panel, and the motion panel acknowledged . . . Well, they wanted to remand rather than to conduct the rest of this appeal. That's kind of behind us. I mean, we're going to decide this appeal. One way or the other. So why would we rule on an indicative ruling? Because an indicative ruling can be changed by the district court. I'm not asking you to . . . I don't see how we have jurisdiction on whether the district court is going to allow an amendment and this and that. That just strikes me as the kind of thing that's not part of this limited appeal. Judge Haynes, I'm not asking you to rule on the indicative ruling itself. I would ask you to clarify the errors in the motion panel ruling so that they don't result in any further confusion below. And specifically, we did raise the commandeering claim. It was never addressed. One thing that that ruling did get right is that it was never addressed by the Supreme Court and it was never addressed by this court. But it was raised in our original complaint. We didn't just raise it in a preliminary injunction argument. It is count five in our The other point in that ruling that I think is very . . . it is partly correct and partly incorrect is the January 25th guidance. The court kind of goes back and forth in the motion panel ruling. It acknowledges that it is tethered to the November rule. And it is tethered to the original rule. The government makes the argument that it's entirely new, that it has no enforcement. In fact, they've taken $350,000 from Kansas, which is not in the record because we haven't been able to litigate that claim. Are you saying that . . . you're thinking that the motions panel ruling is going to have some further . . . like a cloud over the case or something? I mean, isn't that over and that's not . . . that's preliminary and we have all sorts of language about how So . . . I'd be delighted to have you say that. No, but I mean, that's our normal rule about motions panel ruling. And then we go to the other panel, the merits, and certainly you can consider, certainly, reasoned arguments. You don't always have to reinvent the wheel or whatever. And so it's not meant to be disparaging of the motions panel. But at the same time, it's no longer the ruling in the court. I mean, that's not . . . I guess I think you're saying it's going to hold sway over the district court in some way and it's got some errors in it. Is that what you're saying? I think it does have errors in it. The errors are the plain statement in three separate places in that ruling that commandeering was not asserted in the beginning and it was. Have you asked us to vacate the motions panel ruling? We did. We asked . . . we petitioned for rehearing . . . No, I mean, in this particular version, where we are now, we can't vacate that, can we? But it's whether it has any force or not is subject to our particular rules and what we've said on motions panels and in rulings. We have a whole series of opinions about motions panels and whether they are binding. Well, and I think the motions panel ruling itself said it's not binding on this panel. So that it's not binding. Okay. So are you saying it's somehow still in effect for the district court and it's got errors in it? It does have errors in it. I just want to be sure that it doesn't cause any future problems down the line in this case. That's all it was ruling on. It is ordered that the plaintiff's state's opposed motion to remand the case to the district court is denied.  That's what it was ruling on. That's all it ruled on. Well, we are, that was just in the middle of the appeal. We're going to decide the appeal and we're going to remand whatever we say. That's no question about that. On a preliminary injunction, you got to send it back. So I don't understand what, I mean, so the holding in that is kind of over because I think the motions panel knew we were going to remand. You're saying it gave some hints or something? I just want it to be clear. The motions panel itself referred to this panel and said you can do whatever you want with its ruling. We think you ought to vacate it or at least say it doesn't apply. It has no further effect. It's gone. They already said themselves that it doesn't bind us. It's not binding anymore. So I won't belabor the point. I mean, I just, I wanted to address it. Why is it not the simplest thing and ultimately the clearest thing to simply just say we remand? That's perfectly acceptable. We asked, you know, we've, we have conceded since February that this case should be remanded. Well, I mean, it just seems to me that we're tying ourselves in knots. It could be avoided without just a simple remand. Let the district court first rule on these matters. The Eighth Circuit simply issued a very clear order. It vacated and remanded to the Eighth Circuit. I mean, to the, to the district court for further proceedings on the permanent injunction. That is perfectly acceptable. I mean, we think that could have been done in February. The government has managed to keep us here for a pretty long time on a case that we conceded the injunction should be vacated on and we would like to be able to move forward. What do you say about the fact that if it seems clear to this panel that the motions to amend the complaint are meritless in view of these January and February orders, should, should we say anything about that? Absolutely not. I mean, we think that those are issues that are not before this court. We, we, we think that those are issues that are properly addressed by the district court. If they, they, they can raise those issues on a motion to dismiss, they can raise them in summary judgment. I would also point out that one of the other extraordinary aspects of this case is there's not an administrative record. There's never been an administrative record filed in this case yet and yet the government makes the extraordinary claim that it's all over. Why am I in error to think that none of these, of these two orders do not state any kind of enforceable order that would be appealable? I mean, I just don't see standing that there's a real controversy. What controversy is created by these two orders? So there's, I'll walk you through just real quickly. The original rule said we're going to enforce this through state surveyors. More guidance on, on that to follow. That guidance came January 25th and February 9th. And, and that guidance threatened state funding. And they have in fact carried out that threat with Kansas, that Kansas is not a party to this suit. They are in the Missouri coalition. But they have in fact carried out that threat. So we absolutely have standing. They have denied funding solely on the basis of these supplementary orders or rulings or opinions or whatever they may be. The state's, the state declining to go out and enforce and comply with the surveyor mandate. But isn't that why we shouldn't be ruling on that stuff? Because it's not before us and maybe there's factual issue. I mean, I have no idea. I'm just saying to me, our jurisdiction is over the preliminary injunction that was appealed and we need to rule on that. And regardless of our ruling on that, we remand. Yes, I agree with you. And so in order that says, vacate and remand, have a nice day, that would be, that would be complying with what we're supposed to do. Is that fair? That is fair. Okay. And you think we do or do not have jurisdiction to opine on all this other stuff? I think those are advisory rulings and I don't think that you should do that. I mean, do you have jurisdiction to do it? I don't think so. I think that there's no other pending relief requested of this court by the government other than to vacate the injunction. That's it. So all of the things that they're asking you to do today or that they've argued in brief for you to do, go beyond the relief that they requested in their appeal. So I don't think you have jurisdiction to address that. I think that to the extent that the preliminary injunction has stayed, there's no dispute over that. I would take issue with the representations that the government makes with regard to our spending clause claims with regard to limiting them to state run facilities. Our spending clause claims were not limited in commandeering claims. The commandeering claim relates largely to taking over the state government process. We implement Medicaid. And so they have to use our people to go enforce this rule. And that is part now wrapped up with this new January 25th guidance. The spending clause claim also related to the general rule itself. And in the rule itself, the vague threats to take state funding. We get $16 billion just in the state of Louisiana that is spent on Medicaid every year. So that's a huge threat to us. And so we did make a spending clause claim. We had a commandeering claim. We had APA arbitrary and capricious claims. We had statutory claims. The court can sort that all out. And I think he effectively has done that in his indicative ruling. And we'll just go back and keep going with what he'll permit us to keep going on. Any further?  So may it please the court, Clark Kildabrand for the state of Tennessee. We would agree with this court that while this case may be very complex in the legal issues presented, what this court should do is very straightforward. It should vacate and remand to the district court for legal proceedings to continue at that point. What is the difference between your position and that of Louisiana? We agree with Louisiana that it should simply be vacated or remanded. So you're just going to sing the bass to what she's already said. We don't hope to just say the exact same things. A part of why we're here as well is to explain, because the mandates came into force in Tennessee before they came into force in Louisiana and some of the other states, to show how this is impacting Tennessee and to respond to some of the government statements that they made today as well about how it's impacting Tennessee. For example, they mentioned the footnote in their brief on page 8, footnote 2. They said there that it is our understanding that the facilities have already taken action to lift the immediate jeopardy and implement the IFR. But what this does not mention and what they have not mentioned today is that shortly after saying this, they rejected our remedial plans that were submitted to CMS. And currently right now, they have paused and have not told us when it will resume, but we have 60 days once they decide to have these proceedings move forward before they will terminate funding for these facilities for those intellectually disabled who need help. At that point, they've also mentioned that our only avenue for relief is to sue an industry court in Tennessee. However, what this neglects as well is that there's actually more of a process after the end of that 60 days than we can also go before an HHS, ALJ. You can't come to the Fifth Circuit. As much as we are valuing seeing Tennessee, and it's you need to go somewhere else, I guess, is really what she was saying. I think it's very common for states to join with each other in litigation. This happens Oh, I understand that, but you by yourself, Tennessee is the one, let's just say Tennessee is the one where all their hospitals are losing money and this and that, and there's just all these problems. You can't just ask Louisiana to help you out. They've also got to be suffering the same thing that you say you're suffering for them to be able to sue within the Fifth Circuit. Listen, Your Honor, so we tried to join this suit on February 4th. That's when we were going to file the Second Amendment complaint. So it was not until after that that the actions were taken against Tennessee then. And I'll also point out the federal government never opposed in the district court Tennessee or the Commonwealth of Virginia joining this litigation. They had no problem with us joining the case there. That's very common that you have different damages amounts for each particular state and they each submit their own affidavit. The ACA case is a great example. The Supreme Court found that it wasn't related enough to the subject matter, the harms that the states were going to suffer. But nonetheless, prior to that, everybody agreed that they had standing because they had each of their individual affidavits of all the expenses that the states had. And so, I mean, you might have a standing issue at some point regarding whether or not it relates to the subject matter or something. We're certainly not here to judge that today. But why couldn't you bring that in a lawsuit with other states in a coalition and say what your amount of damages are? So at the time that we were trying to join this case on February 4th, we were facing a very impending deadline of it being implemented in Tennessee. To us, it made sense, as in other cases, to join an already existing lawsuit that was going forward. I just want to clarify, I wasn't suggesting you have to have the exact same damages because every state's obviously going to have different amounts of money. My point was you have to have a similar case. I don't see how you can just join because you're unhappy with the United States government because then that would be a lot of joinder. I'm just saying it needs to be joining in the same problem. And it sounded like there's some suggestion that you all are suffering from something that others aren't. If that's not true, then yes, you can join. But if you were suffering something different, I don't mean an amount of money, I mean in concept, then I think you do have to sue by yourself and you can't just do that here. If you can join with Louisiana, fine. I'm not ruling on that. I'm wondering why we're even having this conversation. I mean, it sounds like something that would be interesting to talk about at lunch. But I'm wondering why we're having this conversation in this case. What is our jurisdiction over this? And I don't want to suggest I'm having lunch with you all. Sorry. We were simply asking to remand for the district court to do so. And we were asking this court to do so as quickly as it could then. Do you have anything else? Well, I think there are arguments the federal government has made that we would, if it's on similarities, we had similar anti-commandeering arguments that Louisiana and the other states had put forward. We had similar spending clause arguments that Louisiana and the other states had put forward. Those were not addressed by the U.S. Supreme Court's decision at all. If you look at the parts of the decision there where the federal government has pointed to, the opinion says that we also disagree with the respondent's remaining contentions in support of the injunctions entered below. But then if you look at what follows, it's really just focusing on APA arguments and statutory arguments. The next sentence is first, the interim rule is not arbitrary and capricious. And then the next paragraph is that other statutory objections to the rule, fair no better. So there really is not this implicit decision against the states on those issues there. The district court had actually ruled against Louisiana on those issues. That was not part of the appeal here. So what we're really just asking is for this court to vacate and remand and allow litigation to continue there. So we won't take any more of this court's time, but we appreciate y'all letting us feel the commentary today. Thank you. Thank you. We have your argument. Ms. Klein? Just two points. On Tennessee, the point we're making is their type of claim is materially different from what the rest of the case is about. We hear them to be saying three or four Tennessee run facilities may face enforcement action because they didn't comply. And if so, by statute, under the provisions we cited, the exclusive venue is a district court in Tennessee. That type of claim by statute couldn't just be joined together with a bunch of other states and brought within the Fifth Circuit. And the only other point is we agree with the plaintiffs, Louisiana plaintiffs, that they raised the anti-commandeering claim in their original complaint. And again, on page 30 of the district court's preliminary injunction opinion, it said, although many health care facilities that are subject to the rule are private, many are likely run by some or all of the plaintiff's states, which could result in violation of the anti-commandeering doctrine. And just making the simple point that even though there are state-run facilities, that it does not follow that there's an anti-commandeering claim because the state-run facilities are regulated in the same capacity as privately-run facilities, and the Supreme Court has said repeatedly that that doesn't... So whether we address that or not, if we vacate that injunction, that vacates the whole discussion. Agreed. Agreed. We're not saying the court needs... Could we add an indifferent? Absolutely agreed. The court does not need to address it, but if the court does address it, we want to make clear both that we agree with the plaintiffs that they raised this claim in their original complaint, and indeed the district court addressed it. It did so in a way that's incorrect, and this court does not have to correct that misconception. But if it did, you know, Supreme Court precedent, Murphy, and the cases it cites say there's no anti-commandeering claim when the state entity is regulated even-handedly along with private entities. Unless the court has questions, I'll sit down. Thank you. Thank you. Thank you. We appreciate all the arguments in this case today. It is submitted.